### BAILEY et ux. v. SIMON et al.

### No. 17458.

Court of Appeal of Louisiana. Orleans.

Dec. 16, 1940.

Lubin F. Laurent and Ben Washastrom, both of New Orleans, for appellants.

Rene J. Waguespack, of New Orleans, for appellees.

McCALEB, Judge.

The plaintiffs, Mr. and Mrs. Numa Bailey, brought this suit seeking recovery of damages against the defendants, Theodore Simon and his mother, Mrs. Maria Waguespack, wife of Albert Simon, in solido, for the death of their son resulting from injuries received by him on November 6, 1938, when he was struck by an automobile driven by the defendant Theodore Simon.

In their petition, plaintiffs allege, in substance, as follows: That, on November 6, 1938, their son, Leopold Bailey, was riding a bicycle on the riverside road of the Louisiana Purchase Highway in the Parish of St. John the Baptist; that, when he reached a point approximately 100 feet below the Lucy Public School, the defendant Theodore Simon, who was proceeding from the opposite direction in a sedan automobile and on the wrong side of the road, suddenly and without any warning whatsoever, drove the automobile into the bicycle and that, as a result of the accident, their son sustained serious injuries from which he finally succumbed on August 16, 1939.

Plaintiffs further charge that the automobile which caused the damage was owned by the defendant, Mrs. Maria Simon, the mother of the driver, Theodore Simon; that her son, Theodore Simon, was a very reckless driver; that he had the reputation of being such in the community in which he lived; that his mother was aware that he was a reckless driver; that, despite her knowledge of these facts, she permitted him to use her automobile and that, in doing so, she contributed to the cause of the accident and the subsequent death of their son, Leopold Bailey. Plaintiffs further allege that their son was unmarried at the time of his death; that he was living with them and that he contributed one-half of his wages to their maintenance and support.

In due course, the defendants appeared and filed their answer to plaintiffs' petition in which they admitted the happening of the accident but denied any responsibility to the plaintiffs for the consequences thereof.

On the day set for the trial of the merits of the case, the defendants interposed various exceptions to plaintiffs' petition. After hearing argument on these exceptions, the trial judge sustained (1) an exception of no cause of action filed on behalf of the defendant Mrs. Maria Simon, and (2) an exception of no right of action filed on behalf of both defendants. Plaintiffs' suit was accordingly dismissed. Wherefore this appeal.

The exception of no cause of action of the defendant Mrs. Simon, which was sustained by the district judge, is grounded on the premise that the plaintiffs do not allege in their petition that the defendant Theodore Simon was acting for and on behalf of his mother at the time of the accident and that, consequently, in the absence of averments showing the existence of the status of principal and agent, she cannot be held liable merely because she was the owner of the offending automobile.

Counsel for plaintiff do not contend that the liability asserted against Mrs. Simon is based upon the theory that her son was

acting as her agent at the time of the accident. They maintain, however, that the petition clearly sets forth a cause of action because it is averred that Theodore Simon was a reckless and careless driver; that he had a reputation as such in the community in which he lived; that his mother knew that he was reckless and that she was therefore negligent in permitting him to use her automobile. It is argued that these allegations are sufficient to bring the case under the doctrine, established by the jurisprudence of this State, that an owner of an automobile, who lends his car to an incompetent driver for the latter's use and benefit, knowing that such driver 'is incompetent, is liable to third persons who may be injured as a result of an accident caused by the carelessness of the borrower. In support of the contention, the following Louisiana cases are cited: Toole v. Morris-Webb Motor Co., La.App., 180 So. 431; Baader v. Driverless Cars, Inc., 10 La.App. 310, 120 So. 515; Anderson v. Driverless Cars, Inc., 11 La.App. 515, 124 So. 312, and Davis v. Shaw, La.App., 142 So. 301.

On the other hand, counsel for Mrs. Simon, while conceding that there are instances where an owner of an automobile may become liable for his negligence in lending his car to an incompetent person, maintains that the allegations of plaintiffs' petition are insufficient to show that the defendant Theodore Simon was an incompetent or inexperienced driver and that the mere allegation that he was a reckless driver is a conclusion of law which cannot be considered in determining whether the petition sets forth a cause of action. In stressing this contention, counsel places great reliance upon the decision of the Second Circuit Court of Appeal in Davis v. Shaw, supra.

■ It is well recognized in the jurisprudence that, ordinarily, the owner of an automobile, who lends his car to another for the latter's convenience, is not responsible to third persons for injuries received by them as a result of the negligent operation of the car by the borrower. Liability is denied in such instances because the borrower of the automobile is not the agent of the owner and also because a motor vehicle is not considered to be a dangerous instrumentality per se such as ferocious animals, locomotives, gunpowder, dynamite, or other dangerous machines or agencies. See 42 Corpus Juris under Motor Vehicles, Section 16, Page 614.

■ On the other hand, it is equally well established, as an exception to the general rule above stated, that there are instances in which an automobile may become a dangerous instrumentality—that is, where the owner permits it to be driven in a defective condition so that it cannot be controlled when it is in operation or where he allows it to be operated by persons who do not know how to drive, by insane persons or by persons who are similarly incompetent by reason of temporary or permanent defects in their mental or physical faculties. In such instances, where it appears that the owner of an automobile has entrusted its use to an incompetent person, with full knowledge of the borrower's inability, he may render himself responsible to another, who is injured by the carelessness of the borrower, for his negligence in permitting his car to become a dangerous instrumentality by its use upon the public highways in incompetent hands. In Huddy's Cyclopedia of ·Automobile Law, Volumes 3 and 4, § 42, it is stated: "Similarly, where the owner of a car lends, rents or otherwise intrusts it to one, though not an agent or servant, who is so incompetent or inexperienced in the handling of the same as to convert it into a dangerous instrumentality, and such incompetency or inexperience is known to the owner, he is liable for the consequences of such person's negligence."

In 5 Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, § 2924, we find the following:

"An automobile, though not dangerous per se, is, in the hands of a person having no knowledge of how to drive it, a dangerous machine to turn loose on busy streets, and though, as a general rule, in the absence of statute, an owner of a motor vehicle is not liable for injuries to third persons from its negligent use by another, to whom he loans or intrusts it for the latter's purposes, an exception to the rule exists where the owner loans his machine to one who is so reckless, heedless, or incompetent in his operation of the vehicle loaned as to render it, while in his hands, a dangerous instrumentality, especially where the one to whose charge the car is committed is prohibited by statute from operating it.

"In such cases the owner is liable for the driver's negligence in the operation of the machine, if he knows, at the time he so intrusts it to him, of the driver's char-

acter and habits, with respect to operating automobiles or of his incompetency, or if he should know such driver to be reckless or incompetent, and for all injuries naturally and probably resulting from such driver's recklessness or incompetency. The liability in such instances rests not upon the fact of ownership, but upon the combined negligence of the owner in intrusting the machine to an incompetent and reckless driver and of the driver in its operation. * * *"

In Baader v. Driverless Cars, Inc., supra, we held that a corporation that rents an automobile to a drunken driver is liable for the damages sustained by a pedestrian due to such driver's negligence upon the principle that one who entrusts to incompetent hands a potentially dangerous agency, such as an automobile, is responsible for the mischief done. To the same effect is our decision in the case of Anderson v. Driverless Cars, Inc., supra.

In Toole v. Morris-Webb Motor Co., Inc., supra, the plaintiffs' petition alleged that their son had been killed by the negligent operation on the part of one Burns of an automobile which had been purchased by him from the defendant, Blankenship Motors, Inc.; that Blankenship Motors was responsible to them for the consequences of the accident because it had lent to Burns a set of its dealer's license plates and had thus facilitated him in the operation of the car when it knew that he did not know how to drive. We held that the allegations of the petition were sufficient to state a cause of action as against Blankenship Motors, Inc., since it was averred that Burns did not know how to drive and the defendant knew that he was incompetent and that, by allowing him to use its dealer's license plates, it had facilitated him in permitting the automobile to become a dangerous instrumentality upon the public streets.

It should be observed, however, that, in all of the foregoing cases, it appeared that the owner had lent or rented the offending automobile to a person who was alleged to be incompetent, either by reason of the fact that he did not know how to drive or because he was drunk and was thereby rendered incapable of operating the car. We are not aware of any decision in Louisiana, which sustains liability on the part of the automobile owner who is charged with knowingly lending his car to a "reckless" or "careless" person.

On the contrary, in the case of Davis v. Shaw, supra, in which a writ of review was subsequently refused by the Supreme Court, the Court of Appeal for the Second Circuit specifically held otherwise. In that matter, the plaintiff alleged that the defendant, Mrs. Shaw, had permitted her nephew, Oscar McLain, to use her automobile, with the knowledge that "he 'was and is a careless, reckless and incompetent driver of an automobile.'" [142 So. 303.] The court, in dismissing the plaintiff's suit on an exception of no cause of action, while recognizing that the owner of an automobile might render himself liable to third persons by entrusting the use of his car to an inexperienced or incompetent driver, held that the allegations of the petition did not state such a case since "general averments that the driver had previously driven recklessly alone cannot be sufficient, but at least the circumstances and places where such previous occurrences were alleged to have happened must be set out in detail."

In addition to this, the court plainly indicated that a distinction should be drawn between averments to the effect that the car was entrusted to a careless driver and those charging that the car was placed in the hands of an incompetent person. It stated that a reckless or careless driver is not necessarily an incompetent driver because a person may be most competent and skillful and have full knowledge with respect to the mechanism and operation of an automobile and yet, on occasions, may drive rapidly or recklessly or otherwise be imprudent. The court then concludes that the doctrine which fastens liability upon the owner, where he entrusts the use of his car to an incompetent driver, does authorize a recovery upon a showing that the car was loaned to one who is declared to be a reckless driver.

In the case at bar, the allegations contained in the petition respecting Mrs. Simon's liability are that her son was a reckless driver; that he had a general reputation as such in the community and that she knew it. While the charge that Theodore Simon was a reckless driver is nothing more than a conclusion of the pleader, the allegation that he had the reputation in the community of being a reckless driver and that his mother had knowledge of it is a statement of fact which must be admitted as true on consideration of the defendant's exception. The question therefore is whether recovery should

be permitted under the circumstances alleged.

We do not think so. Although Mr. Blashfield states, in his treatise on automobile law, that recovery should be permitted under conditions similar to those appearing here, we feel that it would be a dangerous precedent, which might lead to the filing of many groundless and vexatious lawsuits, to extend the doctrine (that an owner is liable to a third person who has been injured by his automobile which has been knowingly placed in the hands of an incompetent person) to cases where the car has been lent to a reputedly reckless driver. It is manifest that, to permit recovery under such allegations, the proof concerning the reckless tendencies of the borrower, of which the owner is charged with having knowledge, must either relate to a series of past events or accidents in which the borrower was involved and has been found to be careless or it must be shown that many persons, who have previously seen the borrower drive, are of the opinion that he is reckless. The court, in such circumstances, would be required to consider any number of previous alleged negligent incidents having no connection with the accident in suit and would be called upon to decide whether the driver's past acts of omission or commission are sufficient to authorize the conclusion that he should be characterized as a person who constantly operates a car in a reckless manner. And, in reaching a decision, what standard or test should be used in determining whether a driver is to be classed as one who drives dangerously upon all occasions? Should the number of previous accidents in which he was involved control or should the nature of his past conduct under a certain set of circumstances be given greater weight? The fact that a person has been negligent in the past or that he has been involved in a number of accidents does not, in our view, warrant a finding that he has acquired a status whereby he is to be permanently considered as a reckless driver. Nor should such a permanent characterization of his past conduct attach to him merely because a number of people have voiced the opinion that he is careless or reckless.

Then, too, it must be borne in mind that the doctrine as it now stands is indeed a harsh one—for it imposes liability upon an owner for the negligence of a driver over whose conduct he is unable to exercise the slightest degree of supervision or control. And, while we do not question the soundness of the theory under which responsibility is said to attach, we do not believe that the rule should be extended to cases, such as this, where it is obvious from the charges made that the court will be required to consider many matters extraneous to the principal issue and where it is highly improbable that the allegations of the petition could ever be sustained except by a consideration of opinion evidence. We prefer to cling to the views heretofore expressed by our Brethren of the Second Circuit in Davis v. Shaw, supra, that the owner of an automobile, who lends his car to another for the latter's own pleasure and convenience, should not be held responsible to a third person, who is injured as a result of the negligent operation of the car by the borrower, unless it appears that the borrower was incompetent either by reason of the fact that he did not know how to drive or because he was physically or mentally incapable of operating the car and that the owner was well acquainted with his incompetency.

We therefore hold that the District Judge was correct in sustaining the exception of no cause of action filed by Mrs. Simon and dismissing plaintiffs' suit as to her. Plaintiffs have neither suggested that they are able to supply by amendment the deficiency of their allegations with respect to the asserted liability of Mrs. Simon nor have they requested that they be permitted to file supplemental and amended pleadings. Under these circumstances, the judgment of absolute dismissal was proper. Furthermore, since plaintiffs' case is based upon the theory that Mrs. Simon was negligent in lending her automobile to a reckless driver and since we are of the opinion that no liability can result from such a state of facts, it is obvious that no amendment to the petition could be made without changing the nature of plaintiffs' claim.

Disposal of the case as to Mrs. Simon leads us to a discussion of the correctness of the ruling of the trial judge in sustaining the defendants' exception of no right of action to plaintiffs' petition. This exception is based upon the theory that plaintiffs have failed to allege in their petition that their deceased son was not survived by a child and that, in the absence of such negative allegations, they are without a right of action. The pertinent por-

tion of Article 2315 of the Revised Civil Code, under which plaintiffs derive their right of action, provides: "Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the children or surviving spouse of the deceased or either of them, and in default of these in favor of the surviving father and mother or either of them, * * *."

Plaintiffs allege that they are the father and mother of Leopold Bailey, the . deceased, who was 25 years of age at the time of his death; that he was unmarried and that he was living with them.

Counsel for the defendants argues that the foregoing allegations are totally insufficient to vest in plaintiffs a right of action under Article 2315 of the Code since the averment that the deceased was unmarried does not negative the fact that he had not been previously married or that he was not survived by children of such previous marriage or that he did not leave an adopted child.

The point is well taken. In the case of Horrell et al. v. Gulf & Valley, etc., Co., Inc., 15 La.App. 603, 131 So. 709, 711, we said: "On this ground the exeeption was properly maintained because article 2315 of the Civil Code, under which this suit is brought, as amended by Act No. 120 of 1908, gives to the parents a right of action for the death of a child only in the absence of, a surviving widow or children. Thus a petition which does not negative the existence of a widow and children fails to show a right of action in any of the more distant relatives. Blackburn v. Louisiana Ry. & Navigation Co., 128 La. 319, 54 So. 865; Underwood v. Gulf Refining Co., 128 La. 968, 55 So. 641; Register et ux. v. Harrell, 131 La. 983, 60 So. 638; Marshall v. Louisiana State Rice Milling Co., 144 La. 828, 81 So. 331; Stearns v. Love Drilling Co., Inc., 5 La.App. 174."

Here, while the petition negatives the fact that the plaintiffs' son was married at the time of his death, it is not alleged that he was never married or that he did not leave legitimate issue or an adopted child. Under such circumstances, the petition is defective and does not show a right of action in the plaintiffs.

While we find that the judge of the lower court correctly sustained the exception of no right of action, we think that he was in error in refusing the plaintiffs' request to supply the deficiency in their allegations by amended pleadings. It is now the well-settled jurisprudence of this State that a petition, which does not state a right or cause of action, due to the insufficiency of allegations, will not be dismissed absolutely on exception, but that the plaintiff should be permitted to amend. See Reeves v. Globe Indemnity Co., 185 La. 42, 168 So. 488, and Horrell et al. v. Gulf & Valley, etc., Co., supra.

Counsel for the defendants maintains, however, that, since issue had been joined in the case at the time the exception of no right of action was sustained, the plaintiffs should not now be permitted to amend their petition. As authority for this contention, counsel relies on the decision in Police Jury of Parish of Lafayette v. Martin, 140 La. 848, 74 So. 170, where it was held that an amendment changing the allegations or the prayer of a petition so as to make it disclose a cause of action where none was originally stated, should not be allowed after issue joined and, still less, after a judgment sustaining an exception of no cause of action.

The views expressed in the case depended upon by counsel are in discord with the more recent pronouncements of the Supreme Court. In Reeves v. Globe Indemnity Company, supra, the court recognized that there was a conflict in the decisions of the court concerning the right of a plaintiff to amend a petition which did not state a right or cause of action and it specifically overruled many of the cases wherein it had been held that a petition which does not state a right or cause of action is not a petition at all and therefore cannot be amended. The fact that issue had been joined by answer of the defendants in this matter is not, we think, a circumstance upon which the defendants may rely so as to place the plaintiffs in a more unfavorable position. Moreover, the decision in James v. City of New Orleans, 151 La. 480, 91 So. 846, fully sustains the plaintiffs' right to amend their defective petition after issue has been joined.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from, insofar as it maintains the exception of no cause of action filed by the defendant Mrs. Maria Waguespack, wife of Albert Simon, and dismisses plaintiffs' suit as against that defendant, be and it is affirmed.

It is further ordered, adjudged and decreed that the judgment appealed from, insofar as it dismisses plaintiffs' suit absolutely on the exception of no right of action of the defendant Theodore Simon, is annulled, avoided and reversed and it is now ordered that the case be and it is remanded to the Twenty-Fourth Judicial District Court for the Parish of St. John the Baptist for the purpose of permitting the plaintiffs to amend their petition as against the defendant Theodore Simon and for further proceedings according to law and not inconsistent with the views herein expressed. The defendant Theodore Simon to pay the costs of this appeal, all other costs to await the final determination of the cause.

Affirmed in part. Reversed and remanded in part.